IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARQUIS VERNARD WALKER,

      Plaintiff,                                  No. CIV S-07-1323 WBS EFB P

     vs.

T. FELKER, et al.,

      Defendants.                       <u>FINDINGS AND RECOMMENDATIONS</u>

                                  /

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Plaintiff proceeds on his January 29, 2009 second amended complaint in which he alleges, in relevant part, that defendant Cox was deliberately indifferent to his serious medical needs.[1] On December 22, 2009, defendant Cox filed a motion for summary judgment on the ground that there is no evidence that he was deliberately indifferent to plaintiff's medical needs.[2]

////

////

---

[1] This action also proceeds against defendants James, Roche, Bates, French, and Snyder.

[2] The motion for summary judgment was also filed on behalf of defendant Dial. However, plaintiff has since requested that Dial be dismissed from this action. As discussed below, the court construes plaintiff's filing as a statement of non-opposition to Dial's motion for summary judgment and therefore, the court need not address the merits of the motion as to Dial.

1

Alternatively, defendant contends he is entitled to qualified immunity. For the reasons explained below, the court recommends that defendant's motion be denied.[3]

## I. Summary Judgment Standards

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. "When reasonable minds could differ on the material facts at issue, summary judgment is not appropriate." *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting the prior language of Rule 56(c), which was amended in 2007 to implement purely stylistic changes). If the moving party meets its initial responsibility, the opposing party must "set out specific facts showing that there is a

---

[3] After defendant Cox filed his reply brief, plaintiff requested leave to file a supplemental opposition. Dckt. Nos. 80, 81. The Local Rules do not contemplate such filings, as they provide only for a motion, an opposition and a reply. E.D. Local Rule 230. The court finds that plaintiff's supplemental opposition is unnecessary, and therefore recommends that plaintiff's motion to file a supplemental opposition be denied.

genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must demonstrate – through evidence in the form of affidavits and/or admissible discovery material – a factual dispute that is both material (i.e. it affects the outcome of the claim under the governing law) and genuine (i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party).  Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 248-50; *Matsushita*, 475 U.S. at 586 n.11.  Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 322.  Thus, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

In resolving a summary judgment motion, the court examines the pleadings, the discovery and disclosure materials on file, and any affidavits filed by the parties.  Fed. R. Civ. P. 56(c)(2).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in his or her favor. *Anderson*, 477 U.S. at 255*; Matsushita*, 475 U.S. at 587.  Nevertheless, it is the opposing party's obligation to produce a factual predicate from which a favorable inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On March 3, 2009, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 955-60 (9th Cir. 1998) (en banc),  *cert. denied*, 527 U.S. 1035 (1999) (holding that either

the district court or the moving party must inform a pro se prisoner of the requirements of Rule 56), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

## II.     Undisputed Facts

The following facts are not disputed by either party or following the court's review of the evidence submitted, have been determined to be undisputed.

On December 30, 2005, plaintiff injured his right hand. Defs.' Mot. for Summ. J., Stmt. of Undisp. Facts in Supp. Thereof ("SUF") 1. A medical report bearing the same date indicates that a nurse was notified of the injury. Defs.' Mot. for Summ. J., Decl. of Cox in Supp. Thereof ("Cox Decl."), Ex. A at CDCR 27. The report was completed by F. Bates, a Medical Technician Assistant. *Id.* Bates noted a dislocation in plaintiff's right hand. SUF 2.

On January 4, 2006, plaintiff was seen by Dr. James, an emergency room physician, as well as a nurse. Cox Decl., Ex. A at CDCR 84. The nurse noted that an x-ray of plaintiff's hand showed a displaced fracture of the fourth metacarpal, which is commonly referred to as a boxer's fracture. *Id.*; SUF 5. A physical examination in conjunction with x-rays is necessary to properly diagnose a boxer's fracture. SUF 7. When examining a patient who has suffered this type of fracture, the doctor will usually ask the patient to make a fist in order to determine the extent of the injury. SUF 8. In order to treat a boxer's fracture, the injured hand must be immobilized to minimize pain and further damage. SUF 9. Immobilization of the hand can be achieved through the use of a splint or brace. SUF 10. The nurse noted that plaintiff could make a fist easily, that he had swelling over the dorsum (i.e., the back) of his right hand, and that he was given a posterior splint and ace wrap in order to immobilize his right hand and wrist. SUF 11. Dr. James instructed plaintiff to use the splint. SUF 13. Dr. James noted that plaintiff had an angulated fourth metacarpal fracture with dorsal displacement and ordered an x-ray to be taken that day. SUF 12; Cox Decl., Ex. A at CDCR 84, CDCR 108. Dr. James also wrote plaintiff a two week prescription for Motrin/Ibuprofen to be taken as needed for pain. SUF 14; Pl.'s Decl. in Supp. of Disputed Facts ("Dckt. No. 72") at CDCR 169.

4

Defendant is a physician and surgeon licensed by the State of California. SUF 15. Defendant's first involvement in the treatment of plaintiff's right hand occurred when he saw plaintiff on January 27, 2006. SUF 23. At this time, plaintiff's fracture was four weeks old and had already started to heal. SUF 24. Plaintiff informed defendant that he had worn a splint for a short period of time after the fracture. SUF 25. A physical examination of plaintiff's right hand revealed no erythema (redness) or lesions (abnormal tissue). SUF 27. However, plaintiff complained of an anatomical malformation in his hand. SUF 26. Defendant noted that there was an anatomical abnormality on the back of plaintiff's right hand in the area of the fourth metacarpal. SUF 28. Defendant determined that this was a protrusion caused by a calcification where the fourth metacarpal was healing. SUF 28. Calcification is typically seen over the area where a fracture is healing or has healed. SUF 29. The x-ray taken of plaintiff's hand on January 4, 2006 was not in plaintiff's chart when defendant evaluated him on January 27, 2006.[4] SUF 31. Defendant ordered an x-ray of plaintiff's right hand and noted that plaintiff would be seen in two months to discuss the results of the x-ray. SUF 32; Cox Decl., Ex. B at CDCR 75.

It appears from the record that the x-ray ordered by defendant was not taken until February 15, 2006. Cox Decl., Ex. B at 145, Ex. C at CDCR 139. On February 23, 2006, a radiologist reviewed and compared the x-ray ordered by defendant with the January 2006 x-ray. Cox Decl., Ex. C at 139. The radiologist's report states:

> Findings: Comparison is made with old films of January 2006. Fracture of the fourth metacarpal with angulation is again identified. There is evidence for healing.

---

[4] It appears from the record that the radiologist's report of the x-ray performed on January 4, 2006, found the following:

Findings: There is a fracture of the midfourth metacarpal resulting in volar angulation and full width posterior displacement. No other acute osseous injury is identified.

IMPRESSION: 4th metacarpal fracture.

Dckt. No. 72, page 1 of "Exhibit - Plaintiff's Med. File 2 pgs. 1-7."

IMPRESSION: Healing fracture, right 4th metacarpal with angulation.

Cox Decl., Ex. C at CDCR 139.

On February 17, 2006 Melody French, Nurse Practitioner, evaluated plaintiff's right hand and noted some weakness and a boney mass on the dorsal side over the fourth metacarpal. SUF 36. French recommended physical therapy for plaintiff to strengthen his right hand, and prescribed Naprosyn, a nonsteroidal anti-inflammatory drug used to treat pain or inflammation. SUF 37. Plaintiff met with a physical therapist on March 7, 2006 for an evaluation. SUF 38. The physical therapist noted that he instructed plaintiff to continue exercises for strength and range of motion. SUF 39. Plaintiff refused physical therapy on April 3, 2006, and again on April 11, 2006. SUF 46; Cox Decl., Ex. E at CDCR 134, 135.

Defendant next evaluated plaintiff on March 16, 2006, when he again noted a large protrusion on the dorsal aspect of plaintiff's right hand. SUF 40. Defendant also noted that plaintiff had full flexion and extension of all fingers on his right hand with apparent good healing at that point. SUF 41. Defendant ordered another x-ray to confirm that callous formation was the cause of the protrusion on plaintiff's right hand. SUF 42.

On April 11, 2006, the second x-ray that defendant requested was interpreted. SUF 44. The radiologist's report found as follows:

> Findings: The order states that there is volar angulation with posterior displacement. There is evidence for healing. There is volar angulation as was noted on the order as well as some radial angulation. I do see callus formation. Some bridging is seen medially but not with certainty laterally.
>
> IMPRESSION: Fracture of the fourth metacarpal with both volar and radial angulation with some evidence for healing. Clinical correlation regarding alignment is recommended.

Cox Decl., Ex. E at CDCR 141.

Defendant evaluated plaintiff's right hand injury for the third time on May 24, 2006. SUF 50. Defendant observed that plaintiff had a gross anatomical formation on his right hand. SUF 52; Cox Decl., Ex. F at CDCR 104. After a physical examination of plaintiff's hand and

6

review of the x-ray that was interpreted on April 11, 2006, defendant read the radiologist's recommendation, noted questionable lateral bridging, and referred plaintiff out to orthopedics for evaluation.  SUF 53.  May 24, 2006 was the last time that defendant evaluated plaintiff's right hand injury.  SUF 54.

### III.     Legal Standard for Eighth Amendment Claim

To state a section 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992).  A serious medical need is one that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain.  *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).

Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided.  *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Id.* at 847.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Id.* at 842.  A physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights.  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some

7

treatment is prescribed, may constitute deliberate indifference in a particular case. *Id.* However, it is important to differentiate common law negligence claims of malpractice from claims predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment. In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). It is well established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

**IV.   Analysis**

Defendant argues there is no evidence that he was deliberately indifferent to plaintiff's medical needs.[5] In the alternative, defendant argues he is entitled to qualified immunity.

According to defendant, the evidence shows that he was highly responsive to plaintiff's medical needs and that he took the "appropriate steps" to ensure that plaintiff would be seen by a specialist, if needed. Defs.' Mot. for Summ. J., Mem. of P. & A. in Supp. Thereof ("Defs.' P. & A.") at 10. In support of this argument, defendant claims that the "key therapeutic concept" in treating a patient with a hand injury, "is the preservation of function by use of a splint, physical therapy, and then making the appropriate referral to an orthopedic specialist if needed." *Id.* Defendant submits evidence regarding the importance of immobilization through the use of a splint. SUF 9, 10. He does not, however, submit evidence regarding physical therapy and eventual referral to an orthopedic specialist as a "key therapeutic concept" in treating a boxer's fracture.

Next, defendant asserts that he "ordered additional x-rays to ensure that [plaintiff's] hand was healing properly," and that when the second x-ray he ordered "revealed that [plaintiff's]

---

[5] Defendant only argues that there is no evidence he was deliberately indifferent. Accordingly, it is undisputed that plaintiff's fracture constitutes a serious medical need.

8

fracture might not be healing properly," he referred plaintiff to an orthopedic specialist. Defs.' P. & A. at 10. However, the record does not support defendant's statements that he ordered an x-ray to ensure "proper healing" or that the second x-ray revealed that the fracture might not be "healing properly." Rather, the evidence suggests that defendant first ordered an x-ray on January 27, 2006 because, for reasons unexplained, the January 4, 2006 x-ray image was not in plaintiff's medical file. SUF 31, 32; Cox Decl. ¶ 7. Defendant ordered the second x-ray to confirm "callous formation," but the significance of this term is not explained. *See* SUF 42; Cox Decl. ¶¶ 11, 18. Also not explained is why defendant did not request confirmation of callous formation, assuming its relevance in treating a boxer's fracture, with the first x-ray he ordered. While defendant's evidence suggests that defendant ordered the orthopedic referral after the second x-ray indicated "questionable lateral bridging," the significance of this term is not explained, nor is it clear from the record whether "questionable lateral bridging" was the reason for ordering the orthopedic referral. *See* SUF 53; Cox Decl. ¶¶ 15, 18.

The record suggests that as of January 27, 2006, plaintiff's first visit with defendant, defendant knew that plaintiff had an angulated fourth metacarpal fracture with dorsal displacement and that there was an anatomical abnormality/protrusion on the back of plaintiff's right hand. *See* SUF 28; Cox Decl. ¶ 4, Ex. A at CDCR 84; *see also* Pl.'s Resp. to Defs.' P. & A. ("Dckt. No. 69") at 8-9, 14;[6] Dckt. No. 72, Disputed Fact No. ("SDF") 52, 53. The record does not establish that defendant took "appropriate steps" to ensure plaintiff would be seen by a specialist, as it not clear what, if anything, changed between plaintiff's first visit and last visit, when defendant decided to refer plaintiff to an orthopedic specialist.

////

---

[6] Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket No. 69, which is signed under penalty of perjury, is considered as a declaration. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (where a plaintiff is proceeding pro se, the court must consider as evidence contentions based on personal knowledge where attested under penalty of perjury), *cert. denied*, 546 U.S. 820 (2005).

9

Defendant points out that at plaintiff's first visit, plaintiff had already been provided pain relievers, anti-inflammatory medication, and a wrist splint, and that he did not refer plaintiff to an orthopedic specialist at that time because the current course of treatment appeared to have resulted in the preserved function of plaintiff's right fingers and wrist with no complaints of pain. Defs.' P. & A. at 10; SUF 33. Defendant also notes that he encouraged plaintiff to continue physical therapy. Defs.' P. & A. at 10. Plaintiff submits conflicting evidence. He claims that he was in pain, had limited functioning of his right hand, and that he made defendant well aware of these facts, yet defendant refused to prescribe pain medication and delayed the referral to an orthopedic specialist. Dckt. No. 69 at 5-6, 14, 16; *see also* Pl.'s Decl. in Supp. of Opp'n to Mot. for Summ. J. ("Dckt. No. 70") at 3-5. Plaintiff's evidence shows that his prescription for Ibuprofen had expired before plaintiff's first appointment with defendant. Dckt. No. 72 at CDCR 169. It also shows that plaintiff told defendant that Ibuprofen hurt his stomach and asked if defendant could provide something else for the pain. Dckt. No. 70 at 3. Plaintiff claims that he complained to defendant about his loss of strength, sensitivity and sleep because of the pain he was experiencing and that he could not grip, grab or properly use his hand because of both pain and weakness. SDF 26, 30, 33; Dckt. No. 69 at 5, 16; *see also* Dckt. No. 70 at 3. Plaintiff disputes whether defendant encouraged him to continue physical therapy, asserting instead that defendant acted as if physical therapy had been prematurely ordered, in response to plaintiff's complaints that the physical therapy caused him more pain. SDF 43. While plaintiff admits he could flex and extend his pointer, middle and thumb, he denies being able to flex and extend his ring and pinky fingers properly. SDF 51. Further, plaintiff submits evidence that at his second appointment with defendant, defendant told plaintiff he would be seeing an orthopedic specialist "soon," and that at their final appointment, defendant suggested that plaintiff should be grateful and/or feel lucky to be sent out to a specialist. SDF 42; Dckt. No. 70 at 5.

////

1          Finally, plaintiff submits a medical record showing he was seen by an orthopedic
2  specialist on August 25, 2006.  Dckt. No. 72 at CDCR 235.  The medical record notes that
3  plaintiff's fracture was "going on to complete healing . . . [at] about 45 degrees of volar
4  angulation."  *Id.* at CDCR 236.  According to plaintiff, the orthopedic specialist told him that
5  "the institution waited too long to send plaintiff [to see him]."  Dckt. No. 69 at 10.  Plaintiff
6  claims he now suffers in constant pain, with a loss of strength and use of his dominant, right
7  hand.  *Id.* at 3, 10, 14.
8          The evidence, viewed in the light most favorable to plaintiff, raises an inference that
9  defendant was indifferent to plaintiff's need for pain medication and proper treatment of his
10 fractured finger and that this indifference was beyond mere negligence and, indeed, deliberate.
11 The court therefore concludes that plaintiff has presented sufficient evidence for a reasonable
12 jury to decide that defendant was deliberately indifferent to his medical needs.  Thus,
13 defendant's motion for summary judgment must be denied.

14 **V.     Qualified Immunity**

15         Defendant contends that even if he violated plaintiff's constitutional rights, he is entitled
16 to qualified immunity under *Anderson v. Creighton*, 483 U.S. 635, 638 (1987), which protects
17 government officials from liability for civil damages if a reasonable person would not have
18 known that the conduct violated a clearly established right.  Defs.' P. & A. at 11.  In determining
19 whether a governmental officer is immune from suit based on the doctrine of qualified immunity,
20 the court considers two questions: 1) do the facts alleged show the officer's conduct violated a
21 constitutional right; and 2) was the right clearly established?  *Saucier v. Katz*, 533 U.S. 194, 201
22 (2001); *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009) (courts have discretion to decide which
23 of the two *Saucier* prongs to address first).

24         As indicated above, there are sufficient facts in the record upon which a reasonable jury
25 could conclude that defendant, by acting with deliberate indifference to plaintiff's need for pain
26 medication and proper treatment of his fractured finger, violated plaintiff's Eight Amendment

rights.  Moreover, there is little doubt that his rights with respect to prison medical staff indifference to a serious medical condition were well established at the time the alleged violations occurred.  *See Estelle*, 429 U.S. at 104-05; *McGuckin*, 974 F.2d at 1060.  Whether a jury will credit plaintiff's testimony and find for plaintiff remains to be seen.  But viewing the evidence in the light most favorable to plaintiff, as the court must on this motion, the court finds that defendant is not entitled to summary judgment on the question of qualified immunity.

**VI.    Plaintiff's Request to Dismiss Defendant Dial**

With his opposition to the motion for summary judgment, plaintiff informed the court that he "no longer pursues his claim against defendant L. Dial MD . . . [because] his claims against Dr. Dial [are] not as strong as once believed, and plaintiff does not wish to pursue weak claims against Dr. Dial."  Dckt. No. 69 at 17.  Plaintiff therefore requests that the court "dismiss L. Dial MD from any liability on this complaint."  *Id.*

As defendant Dial has already filed a motion for summary judgment, the court construes plaintiff's request as a statement of non-opposition to Dial's motion.  Accordingly, that motion should be granted.

**VII.   Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's May 6, 2010 request to file a supplemental opposition be denied;

2. Defendant Cox's December 22, 2009 motion for summary judgment be denied;

3. Plaintiff's March 1, 2010 request to dismiss defendant Dial, be construed as a statement of non-opposition to Dial's motion for summary, and summary judgment be granted in favor of defendant Dial.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 30, 2010.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE